IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| CODY JOSEPH PRESTI, #A6067834, | CIVIL NO. 21-00405 LEK-WRP |
| Plaintiff, | ORDER DISMISSING COMPLAINT WITH PARTIAL LEAVE GRANTED TO AMEND |
| vs. | |
| ACO DARREN TELEFONI, *et al.*, | |
| Defendants. | |

## ORDER DISMISSING COMPLAINT WITH PARTIAL LEAVE GRANTED TO AMEND

Before the Court is pro se Plaintiff Cody Joseph Presti's ("Presti") Prisoner

Civil Rights Complaint ("Complaint") brought pursuant to 42 U.S.C. § 1983.  ECF

No. 1.  Presti alleges that Defendants[1] violated his rights under the United States

Constitution over the course of three weeks in January 2021, while he was

incarcerated at the Oahu Community Correctional Center ("OCCC").[2]  For the

---

[1] Presti names as Defendants A.C.O. Darren Telefoni, Captain Johnson, C.B.A. Wendel Yoda, Sgt. Alison, U.T.M. An Uedoi, and Muriel Keliihoomalu in their individual and official capacities.  ECF No. 2 at 1–3.

[2] Presti is currently incarcerated at the Halawa Correctional Facility ("HCF").  *See* VINE,  https://www.vinelink.com/classic/#/home/site/50000 (choose "Find an Offender"; then enter "Presti" in "Last Name" field and "Cody" in "First Name" field) (last visited Oct. 15, 2021).

following reasons, the Complaint is DISMISSED with partial leave granted to amend pursuant to 28 U.S.C. §§ 1915(e) and 1915A.  If Presti wants to pursue any claim dismissed with leave granted to amend, he must file an amended pleading on or before **November 15, 2021**.

## I. <u>STATUTORY SCREENING</u>

The Court must conduct a pre-Answer screening of any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity, or in which a plaintiff proceeds in forma pauperis.  28 U.S.C. §§ 1915(e)(2), 1915A(a); *Jones v. Bock*, 549 U.S. 199, 202 (2007) ("Among other reforms, the [Prison Litigation Reform Act of 1995] mandates early judicial screening of prisoner complaints.").  During this screening, the Court must dismiss any complaint, or any portion thereof, that is frivolous, malicious, fails to state a claim on which relief may be granted, or seeks damages from defendants who are immune from suit.  *See* 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b); *Harris v. Mangum*, 863 F.3d 1133, 1137 (9th Cir. 2017); *see also Harris v. Harris*, 935 F.3d 670, 675 (9th Cir. 2019) (describing screening under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(a)–(b)).

In determining whether a complaint should be dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), the Court applies the same standard as that under Federal Rule of Civil Procedure 12(b)(6) ("Rule 12").

*See Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) (per curiam).  Under

this standard, a complaint must "contain sufficient factual matter, accepted as true,

to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009) (internal quotation marks and citation omitted); *Byrd v. Phoenix

Police Dep't*, 885 F.3d 639, 642 (9th Cir. 2018) (per curiam).  "[W]hen

determining whether a complaint states a claim, a court must accept as true all

allegations of material fact and must construe those facts in the light most

favorable to the plaintiff." *Hamilton v. Brown*, 630 F.3d 889, 892–93 (9th Cir.

2011) (quotation marks and citation omitted).  Courts also have an "obligation

where the [plaintiff] is pro se, particularly in civil rights cases, to construe the

pleadings liberally and to afford the [plaintiff] the benefit of any doubt." *Byrd*, 885

F.3d at 642 (quotation marks and citation omitted).

## II.  <u>PRESTI'S CLAIMS</u>[3]

At approximately 6:05 p.m. on January 6, 2021, Presti was stretching near a

set of pull-up bars in the OCCC's recreation yard when Telefoni instructed him to

move to the "bench area." ECF No. 1 at 6.  Presti immediately complied. *Id.* at 6–

7.  Telefoni told Presti that he might be transferred to the HCF, apparently because

---

[3] Presti's factual allegations are accepted as true for purposes of screening.  *See
Nordstrom v. Ryan*, 762 F.3d 903, 908 (9th Cir. 2014).

he had been near the pull-up bars. *Id.* at 7.  Presti said "[m]y bad" and told Telefoni that the "rulebook" stated that the pull-up bars were available until 9:00 p.m. *Id.*  Telefoni asked Telefoni, "What?" *Id.*  Presti repeated himself. *Id.*  Telefoni then exclaimed, "What!" *Id.*  Presti again repeated himself. *Id.*  Telefoni responded by shouting, "Fuck da rulebook!" *Id.*  According to Presti, Telefoni retaliated against him for citing the rulebook by "maliciously filing a fraudulent misconduct report." *Id.* at 7–8.  Specifically, Telefoni told a lieutenant that Presti had "refused to obey an order." *Id.* at 7.

Soon afterward, the lieutenant ordered all inmates to lockdown in their "bunk areas." *Id.*  Later the same evening, a sergeant lifted the lockdown for all inmates except Presti. *Id.* at 8.  According to Presti, Telefoni's sister, Captain Johnson, ordered his lockdown to remain in place. *Id.* at 9.  Specifically, Johnson issued an order stating that Presti was not allowed "recreational exercise," he had to eat on the floor near his bunk, and he could not attend Bible study sessions. *Id.* at 10.  These restrictions remained in place through January 9, 2021. *Id.* at 10–11.

On January 10, 2021, Yoda moved Presti to an administrative segregation cell while an investigation of Presti's alleged misconduct was pending. *Id.* at 12.  During this time, Alison ordered the removal of a "metal bed/desk" from his cell. *Id.* at 13.  Alison also "ordered or permitted" Presti's "hygiene items" and a "religious book" to be confiscated. *Id.*  When Presti complained to Alison about

these issues, Alison allegedly ignored him. *Id.* Presti remained in administrative segregation for ten days, until January 19, 2021. *Id.* at 12.

Uedoi served as the adjustment hearing officer during a January 25, 2021 adjustment hearing for Presti. *Id.* at 15. According to Presti, (1) only two staff members were present for his hearing, instead of the three that were required; (2) Uedoi demonstrated bias by interrupting Presti; (3) Uedoi disregarded three witnesses' testimony; and (4) Uedoi misquoted Presti's statement and included "fictitious information" in a written disposition. *Id.* at 15–16. Presti claims that Keliihoomalu imposed a punishment different from those imposed on eight other inmates who had been found guilty around the same time of refusing to obey an order. *Id.* at 17–18.

In his request for relief, Presti seeks damages totaling $1.455 million and various forms of injunctive relief. *Id.* at 19–21.

## III. <u>DISCUSSION</u>

### A. Legal Framework for Claims Under 42 U.S.C. § 1983

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Park v. City & County of Honolulu*, 952 F.3d 1136, 1140 (9th Cir. 2020). Section 1983 requires a

connection or link between a defendant's actions and the plaintiff's alleged deprivation.  *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 692 (1978); *Harper v. City of Los Angeles*, 533 F.3d 1010, 1026 (9th Cir. 2008) ("In a § 1983 action, the plaintiff must also demonstrate that the defendant's conduct was the actionable cause of the claimed injury." (citation omitted)).  "'A person "subjects" another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'"  *Lacey v. Maricopa County*, 693 F.3d 896, 915 (9th Cir. 2012) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978)).

## B.  Eleventh Amendment

Presti names each Defendant both in his or her official capacity and individual capacity.  ECF No. 1 at 1–3.

"The Eleventh Amendment bars suits for money damages in federal court against a state, its agencies, and state officials acting in their official capacities." *Aholelei v. Dep't of Pub. Safety*, 488 F.3d 1144, 1147 (9th Cir. 2007) (citation omitted); *see Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101–03 (1984).  It does not bar official-capacity suits for prospective relief to enjoin alleged ongoing violations of federal law.  *See Wolfson v. Brammer*, 616 F.3d 1045, 1065–66 (9th Cir. 2010); *see also Will v. Mich. Dep't of State Police*, 491

U.S. 58, 71 n.10 (1989). Nor does it bar suits for damages against state officials in their personal capacities. *See Hafer v. Melo*, 502 U.S. 21, 30–31 (1991); *Porter v. Jones*, 319 F.3d 483, 491 (9th Cir. 2003).

Presti seeks various forms of injunctive relief against Defendants in their official capacities. ECF No. 1 at 19–20. Presti may not seek such relief against Defendants in their official capacities based on events at the OCCC, however, because he is no longer incarcerated there. *See Dilley v. Gunn*, 64 F.3d 1365, 1368–69 (9th Cir. 1995) (concluding that prisoner's claims for injunctive relief were moot because he was transferred to another prison and had not demonstrated a reasonable expectation that he would be transferred back); *Alvarez v. Hill*, 667 F.3d 1061, 1064 (9th Cir. 2012) ("Once an inmate is removed from the environment in which he is subjected to the challenged policy or practice, absent a claim for damages, he no longer has a legally cognizable interest in a judicial decision on the merits of his claim." (quotation marks and citation omitted)). Presti's claims for injunctive relief are therefore DISMISSED with prejudice.

Presti properly acknowledges that he cannot seek money damages from Defendants in their official capacities. *See* ECF No. 1 at 20 (stating that he was "not request[ing] monetary damages" from Defendants in their official capacities); *Mitchell v. Washington*, 818 F.3d 436, 442 (9th Cir. 2016) ("The Eleventh Amendment bars claims for damages against a state official acting in his or her

official capacity." (citation omitted)).  The Eleventh Amendment does not bar Presti's claims for money damages against Defendants in their individual capacities.  *See Mitchell*, 818 F.3d at 442 (explaining that the Eleventh Amendment does not "bar claims for damages against state officials in their *personal* capacities").

## C.  First Amendment

### 1.  Retaliation

Presti alleges in Count I that Telefoni retaliated against him by "maliciously filing a fraudulent misconduct report" after Presti repeatedly told Telefoni that the OCCC's "rulebook" allowed use of the pull-up bars until 9:00 p.m.  ECF No. 1 at 6–8.

"[A] prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974); *Jones v. Williams*, 791 F.3d 1023, 1035 (9th Cir. 2015).  "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) [a]n assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d

559, 567-568 (9th Cir. 2005) (citations omitted); *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009) (same).

Presti fails to state a retaliation claim for two reasons.  First, Presti does not allege that Telefoni's actions "would chill or silence a person of ordinary firmness from future First Amendment activities."  *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012).  Second, Presti fails to allege that Telefoni's actions did not reasonably advance a legitimate correctional goal.  *See Herrera v. Ortega*, No. 20-02035 BLF (PR), 2020 WL 5257606, at *1 (N.D. Cal. Sept. 3, 2020) ("Plaintiff allegations against Defendants . . . are insufficient to state a retaliation claim because he fails to satisfy the fourth and fifth elements above, i.e., that their actions chilled the exercise of his First Amendment rights and did not reasonably advance a legitimate correctional goal.").  Thus, Presti's retaliation claim against Telefoni in Count I is DISMISSED with leave granted to amend.  *See Litmon v. Harris*, 768 F.3d 1237, 1241 (9th Cir. 2014) ("[A] liberal interpretation of a pro se civil rights complaint may not supply essential elements of the claim that were not initially pled.").

### 2.  Free Exercise of Religion

Presti alleges that his rights under the Free Exercise Clause of the First Amendment were violated by (1) Johnson prohibiting him from attending Bible study sessions between January 6–9, 2021 (Count III), ECF No. 1 at 10; and (2)

Alison "confiscat[ing]" a "religious book" during Presti's time in administrative segregation between January 10–19, 2021 (Count V), *id.* at 14; *see also id.* at 3.[4]

"The right to exercise religious practices and beliefs does not terminate at the prison door[,] but a prisoner's right to free exercise of religion is necessarily limited by the fact of incarceration." *Jones*, 791 F.3d at 1032 (quotation marks and citation omitted) (brackets in original). To implicate the Free Exercise Clause, a plaintiff must allege that the belief at issue is both "sincerely held" and "rooted in religious belief." *Walker v. Beard*, 789 F.3d 1125, 1138 (9th Cir. 2015) (quotation marks and citation omitted).

Additionally, a plaintiff must allege that prison officials substantially burdened the practice of his religion. *Jones*, 791 F.3d at 1031. "A substantial burden . . . place[s] more than an inconvenience on religious exercise; it must have a tendency to coerce individuals into acting contrary to their religious beliefs or exert substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Id.* at 1031–32 (citation omitted). "[R]equiring a believer to defile himself by doing something that is completely forbidden by his religion is different from (and more serious than) curtailing various ways of expressing beliefs for

---

[4] Although Presti made these allegations in the context of conditions-of-confinement claims under the Eighth Amendment, *see* ECF No. 1 at 10, 13, the Court considers them under the Free Exercise Clause of the First Amendment.

which alternatives are available." *Ashelman v. Wawrzaszek*, 111 F.3d 674, 677

(9th Cir. 1997).

Even when a regulation or practice burdens an inmate's First Amendment

rights, it may be upheld if it is reasonably related to a legitimate penological

interest. *Turner v. Safley*, 482 U.S. 78, 89 (1987).  This determination requires

courts to consider:  (1) whether there is a valid, rational connection between the

regulation and the legitimate governmental interest; (2) whether there are

alternative means of exercising the right that remain open to inmates; (3) the

impact accommodation of the right will have on guards and other inmates, and on

the allocation of prison resources; and (4) the absence of ready alternatives.  *Id.* at

90.

Presti fails to state a plausible free exercise claim for at least two reasons.

First, Presti does not allege that he had a belief that was sincerely held.  *Walker*,

789 F.3d at 1138.  Although Presti refers to "Bible studies" and a "religious book,"

he does not identify a sincerely held religious belief.  Indeed, Presti does not

explain how the "religious book" related to any religious belief that he held.

Second, even if Presti had identified a sincerely held religious belief, he has not

plausibly alleged that his inability to attend Bible study sessions for four days or

his lack of access to a "religious book" for ten days substantially burdened the

practice of his religion.  Presti does not allege that he was otherwise prevented

from observing his faith between January 6–19, 2021.  Presti's Free Exercise claim

is DISMISSED with leave granted to amend.

## D.  Eighth Amendment

Presti alleges in Count III that Johnson violated the Eighth Amendment by

issuing an order that denied him "recreational exercise" and required him to eat on

the floor between January 6–9, 2021.  ECF No. 1 at 10–11.  He alleges in Count V

that Alison violated the Eighth Amendment by ordering the removal of a bed and

desk from his cell and denying him "hygiene items" between January 10–19, 2021.

*Id.* at 13–14.

"The Constitution does not mandate comfortable prisons, but neither does it

permit inhumane ones, and it is now settled that the treatment a prisoner receives in

prison and the conditions under which he is confined are subject to scrutiny under

the Eighth Amendment."  *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (internal

quotation marks and citations omitted).  In its prohibition on "cruel and unusual

punishments," the Eighth Amendment "imposes duties on [prison] officials, who

must provide humane conditions of confinement; prison officials must ensure that

inmates receive adequate food, clothing, shelter, and medical care, and must take

reasonable measures to guarantee the safety of the inmates[.]"  *Id.* (internal

quotation marks and citations omitted); *see Foster v. Runnels*, 554 F.3d 807, 812

(9th Cir. 2009).

A prison official violates the Eighth Amendment only when two requirements are met.  First, the deprivation alleged must be, objectively, "sufficiently serious"—that is, "a prison official's act or omission must result in the denial of 'the minimal civilized measure of life's necessities[.]'" *Farmer*, 511 U.S. at 834 (some internal quotation marks and citations omitted); *see Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000).  Second, the prison official must have a sufficiently culpable state of mind.  "In prison-conditions cases that state of mind is one of 'deliberate indifference' to inmate health or safety[.]" *Farmer*, 511 U.S. at 834 (citations omitted).  Thus, "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety[.]" *Id.* at 837. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.*

When determining whether conditions of confinement meet the objective prong of the Eighth Amendment analysis, the court must analyze each condition separately to determine whether that specific condition violates the Eighth Amendment.  *See Toussaint v. McCarthy*, 801 F.2d 1080, 1107 (9th Cir. 1986), *abrogated in part on other grounds by Sandin v. Connor*, 515 U.S. 472, 482–83 (1995); *Wright v. Rushen*, 642 F.2d at 1129, 1133 (9th Cir. 1981).  "*Some*

conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise—for example, a low cell temperature at night combined with a failure to issue blankets." *Wilson v. Seiter*, 501 U.S. 294, 304 (1991).  When considering conditions of confinement, the court should also consider the amount of time to which the prisoner was subjected to the condition.  *See Hutto v. Finney*, 437 U.S. 678, 686–87 (1978); *Hearns v. Terhune*, 413 F.3d 1036, 1042 (9th Cir. 2005).

### 1.  Conditions experienced between January 6–9, 2021 (Count III)

#### a.  Eating on the floor

Presti alleges in Count III that Johnson issued an order that required him to eat "on the floor of [his] bunk area" between January 6–9, 2021.  ECF No. 1 at 10.

The fact that Presti may have had to eat his meals without a table over the course of four days, without more, fails to state a plausible Eighth Amendment claim.  *See, e.g.*, *Cornellier v. Walker*, No. CV 04-0724-PHX-PGR (JJM), 2004 WL 7334915, at *6 (D. Ariz. Aug. 11, 2004) ("The lack of a table upon which to eat, requiring Plaintiff to eat on while sitting on his bed, the floor or toilet, does not rise to the level of cruel or unusual punishment.  At best, it is a mere inconvenience, not a deprivation of minimal civilized measure of life's

necessities.”); *Martin v. Montgomery Cnty. Jail*, No. 3:15-cv-00650, 2015 WL 3823867, at *3 (M.D. Tenn. June 19, 2015) (“Having to eat without a table or chairs does not amount to [the] level of deprivation [required to violate the Eighth Amendment].”).  Presti’s Eighth Amendment claim based on having to eat on the floor is DISMISSED with leave granted to amend.

### b.  Lack of exercise

Presti further alleges in Count III that Johnson prohibited him from exercising between January 6–9, 2021.  ECF No. 1 at 10.

“Exercise has been determined to be one of the basic human necessities protected by the Eighth Amendment.”  *LeMaire v. Maass*, 12 F.3d 1444, 1457 (9th Cir. 1993).  Although “the lack of outside exercise for extended periods is a sufficiently serious deprivation and thus meets the requisite harm necessary to satisfy [the Eighth Amendment’s] objective test,” *id.*, “a temporary denial of outdoor exercise with no medical effects is not a substantial deprivation,” *May v. Baldwin*, 109 F.3d 557, 565 (9th Cir. 1997) (denial of outdoor exercise for twenty-one days did not rise to the level of a serious deprivation under the Eighth Amendment).  *See also Lopez v. Smith*, 203 F.3d 1122, 1133 n.15 (9th Cir. 2000) (en banc) (“[T]emporary denials of outdoor exercise must have adverse medical effects to meet the Eighth Amendment test, while long-term deprivations are substantial regardless of effects.”).

Presti alleges that Johnson denied him exercise over the course of four days. ECF No. 1 at 10.  Given the relatively short-term nature of the deprivation, Presti must plausibly allege that he experienced adverse medical effects because of the lack of exercise.  Although Presti makes vague and conclusory statements that he experienced "weakening" and "lethargy," he not plausibly identified an adverse medical effect he experienced because he was not allowed to exercise for four days.  *See Ruiz v. Woodfill*, No. 2:19-cv-2118 KJN P, 2019 WL 11779135, at *4 (E.D. Cal. Dec. 12, 2019) ("[A]lthough plaintiff claims that he suffered a 'disruption in [his] health' due to the denial of yard access, he fails to identify a specific adverse medical impact caused by his inability to attend yard.").  Presti's Eighth Amendment claim against Johnson based on a lack of exercise is DISMISSED with leave granted to amend.

### 2.  Conditions experienced Between January 10–19, 2021 (Count V)

#### a.  Furniture

Presti alleges in Count V that Alison ordered the "metal bed/desk" removed from his cell while he was in administrative segregation between January 10–19, 2021.

To the extent Presti alleges that he had to eat on the floor because he did not have a desk, for the reasons set forth *supra*, he fails to state a claim.  *See*, *e.g.*, *Cornellier*, 2004 WL 7334915, at *6; *Martin*, 2015 WL 3823867, at *3.

16

To the extent Presti alleges that Alison ordered his "bed" removed, he also fails to state a claim. Being denied a bed for a few nights does not state a claim under the Eighth Amendment. *See Urrizaga v. Twin Falls County*, 106 F. App'x 546 548 (9th Cir. 2004) ("[Plaintiff's] claim that he was denied a bed [for a few nights] fails to meet the required 'objective' showing."). This is true even if Presti had to sleep directly on the floor of his cell. *See Centeno v. Wilson*, No. 1:08-CV-1435-FJM, 2011 WL 836747, at (E.D. Cal. Mar. 4, 2011) (concluding that sleeping on a cold floor without a mattress or blanket for seven days did not violate the Eighth Amendment), *aff'd*, 479 F. App'x 101 (9th Cir. 2012). Presti's claim based on the removal of furniture from his cell is DISMISSED with leave granted to amend.

### b. Hygiene items

Presti further alleges in Count V that Alison ordered his "hygiene items" confiscated. ECF No. 1 at 13.

"Unquestionably, subjection of a prisoner to lack of sanitation that is severe or prolonged can constitute an infliction of pain within the meaning of the Eighth Amendment." *Anderson v. County of Kern*, 45 F.3d 1310, 1314 (9th Cir. 1995). As a result, "[i]ndigent inmates have the right to personal hygiene supplies such as toothbrushes and soap." *Keenan v. Hall*, 83 F.3d 1083, 1091 (9th Cir. 1996).

Here, Presti does not say if he was what "hygiene items" were confiscated from him, when they were taken from him, and how long he was without them. *See* ECF No. 1 at 13.  Presti therefore fails to state a plausible Eighth Amendment claim based on the confiscation of these items.  *See Martin v. Basnett*, No. 17-cv—6263-YGR (PR), 2020 WL 450565, at *8 (N.D. Cal. Aug. 5, 2020) (concluding that confiscation of soap, toothpaste, deodorant, shampoo, conditioner, and cleaning supplies for thirteen days did not violate the Eighth Amendment).  This claim is DISMISSED with leave granted to amend.[5]

### E.  Fourteenth Amendment

#### 1.  Due Process

The Due Process Clause of the Fourteenth Amendment of the U.S. Constitution protects individuals against governmental deprivations of life, liberty, or property without due process of law.  Interests that are procedurally protected by the Due Process Clause may arise from two sources:  the Due Process Clause itself and laws of the states.  *See Meachum v. Fano*, 427 U.S. 215, 223–27 (1976).  In

---

[5] In addition to the removal of furniture from his cell and the confiscation of his "hygiene items," Presti complains about various other conditions he experienced in administrative segregation, including excessive dust, high temperatures, a broken sink, a "filthy" toilet, lack of exercise, no access to the law library, limited drinking water, and limited time to shower each day.  ECF No. 1 at 14.  Presti does not allege that Alison was responsible for these conditions.  Indeed, Presti does not say who he told about these conditions, when he did so, or how they responded.  The court, therefore, does not consider these additional conditions here.

the prison context, these interests are generally ones pertaining to liberty.  Changes

in conditions so severe as to affect the sentence imposed in an unexpected manner

implicate the Due Process Clause itself, whether or not they are authorized by state

law.  *See Sandin*, 515 U.S. at 484 (citing *Vitek v. Jones*, 445 U.S. 480, 493 (1980)

(transfer to mental hospital), and *Washington v. Harper*, 494 U.S. 210, 221–22

(1990) (involuntary administration of psychotropic drugs)).  Deprivations that are

less severe or more closely related to the expected terms of confinement may also

amount to deprivations of a procedurally protected liberty interest, provided that

the liberty in question is one of "real substance."  *See Sandin*, 515 U.S. at 477–87.

An interest of "real substance" will generally be limited to freedom from restraint

that imposes an "atypical and significant hardship on the inmate in relation to the

ordinary incidents of prison life" or "will inevitably affect the duration of [a]

sentence."  *Id.* at 484, 487.

Identifying a constitutionally protected liberty interest is only the first step;

the prisoner also must identify the procedural protections not provided to him

when he was deprived of that constitutionally protected liberty interest to state a

claim.  The procedural protections to which the prisoner is entitled depend on

whether the deprivation results from an administrative decision or a disciplinary

decision.  If it is an administrative decision, due process requires that prison

officials hold an informal non-adversary hearing within a reasonable time after the

prisoner is segregated, inform the prisoner of the reason segregation is being

considered, and allow the prisoner to present his views.  *See Toussaint*, 801 F.2d at

1100, 1104–05.  There also must be some evidence to support the prison officials'

decision.  *Superintendent v. Hill*, 472 U.S. 445, 455 (1985).  If it is a disciplinary

decision, the procedural protections required for the hearing include written notice,

time to prepare for the hearing, a written statement of decision, allowance of

witnesses and documentary evidence when not unduly hazardous, and aid to the

accused where the inmate is illiterate or the issues are complex.  *Wolff v.*

*McDonnell*, 418 U.S. 539, 564–67 (1974).  There also must be some evidence to

support the disciplinary decision, see Superintendent v. *Hill*, 472 U.S. at 454, and

the information that forms the basis for the decision must have some indicia of

reliability, *see Cato v. Rushen*, 824 F.2d 703, 704-05 (9th Cir. 1987).

### a. Restricting Presti to "bunk area"

Presti alleges in Count II that Johnson violated his due process rights by

restricting him to his "bunk area" between January 6–9, 2021.  ECF No. 1 at 9.

During this four-day period, Presti was "denied recreational exercise," he had to

eat on the floor, and he could not attend Bible study sessions.  *Id.* at 10.  Presti fails

to allege facts sufficient to demonstrate that these short-term deprivations

implicated a constitutionally protected liberty interest.  *See King v. Jauregui*, 851

F. App'x 95, 95 (9th Cir. 2021) (concluding that temporary loss of privileges did

not implicate a protected liberty interest); *Quoc Xuong Luu v. Babcock*, 404 F. App'x 141, 142 (9th Cir. 2010) ("[T]he district court properly dismissed [plaintiff's] due process claim concerning his temporary loss of prison privileges because [plaintiff] failed to allege facts implicating a protected liberty interest."); *see also Barno v. Padilla*, No. 20-cv-03886-SI, 2020 WL 65427, at *3 (N.D. Cal. Nov. 6, 2020) ("The . . . discipline -- 90 days of loss of privilege and property restrictions -- was a temporary situation of the sort that courts have repeatedly held does not amount to the "atypical and significant hardship" that *Sandin* requires for a right to due process to exist."). Count II is DISMISSED with leave granted to amend.

### b. Placement in administrative segregation

Presti alleges in Count IV that Yoda violated his due process rights by moving him to an administrative segregation cell between January 10–19, 2021, while his adjustment process was pending. ECF No. 1 at 12. Presti fails to state a claim, however, because administrative segregation by itself does not implicate a protected liberty interest. *See Sandin*, 515 U.S. at 486; *Kenner v. Vidaurri*, 569 F. App'x 489, 490 (9th Cir. 2014); *see also Walker v. Gonzalez*, No. 3:20-cv-0404-CAB (AHG), 2020 WL 4672640, at *3 (S.D. Cal. Aug. 11, 2020) ("Plaintiff does not have a protected liberty interest in remaining free from Ad-Seg pending a disciplinary hearing."). Count IV is DISMISSED with leave granted to amend.

### c. Adjustment hearing

Presti alleges in Count VI that Uedoi violated his due process rights during a January 25, 2021 adjustment hearing.  ECF No. 1 at 15–16.  Once again, Presti fails to identify a protected liberty interest.

To the extent Presti asserts that he was "transferred from the least restrictive prison environment in the state to the most restrictive environment in the state," ECF No. 1 at 17, it appears that he is referring to his transfer from the OCCC to the HCF.  Prisoners, however, have no constitutional right to incarceration in a particular institution.  *Olim v. Wakinekona*, 461 U.S. 238, 244–48 (1983); *Meachum*, 427 U.S. at 224–25.  Indeed, a prisoner's liberty interests are sufficiently extinguished by his conviction such that the state may generally confine or transfer him to any of its institutions, to prisons in another state or to federal prisons, without offending the Constitution.  *Rizzo v. Dawson*, 778 F.2d 527, 530 (9th Cir.1985) (citing *Meachum*, 427 U.S. at 224–25) (intrastate prison transfer does not implicate Due Process Clause), and *Olim*, 461 U.S. at 244–48 (interstate prison transfer does not implicate Due Process Clause).

Although Presti claims that he "suffered an increase in the length of [his] incarceration," ECF No. 1 at 15, he fails to explain how the January 25, 2021 adjustment hearing inevitably affected the duration of his sentence.  Generally, the mere possibility that a disciplinary violation might be detrimental to petitioner in

future parole hearings is too speculative to serve as the basis for a habeas corpus petition. *See* ECF No. 1 at 6 (asserting that the misconduct delayed Presti's "parole eligibility"); *Sandin*, 515 U.S. at 487 (explaining that a disciplinary violation is only one of a "myriad of considerations" relevant to a parole decision and does not inevitably affect the length of the prisoner's sentence); *Ramirez v. Galaza*, 334 F.3d 850, 859 (9th Cir.2003) (observing that a successful challenge to a prison disciplinary proceeding will not necessarily shorten the duration of an inmate's confinement where the parole board could deny parole for other reasons), *cert. denied*, 541 U.S. 1063 (2004). Presti's due process claim in Count IV is DISMISSED with leave granted to amend.

### 2. Equal Protection

The Equal Protection Clause of the Fourteenth Amendment provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. This is "essentially a direction that all similarly situated persons should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). An Equal Protection claim can be stated in one of two ways. First, a plaintiff can allege that "defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *See Barren v. Harrington*, 152 F.3d 1193, 1194–95 (9th Cir.1998) (citing *Washington v. Davis*, 426 U.S. 229, 239–40 (1976)).

Alternatively, if the claims do not involve a suspect classification, a plaintiff can establish an equal protection "class of one" claim by alleging that she "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. Of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *Squaw Valley Dev. Co. v. Goldberg*, 375 F.3d 936, 944 (9th Cir. 2004).

### a.  Racial discrimination

Presti alleges in Count I that Telefoni discriminated against him on account of his race.  ECF No. 1 at 6.  Specifically, Presti alleges that Telefoni submitted a "fraudulent misconduct report" in part because he "is racist against Caucasians[.]" *Id.* at 7.

"The fundamental principle that prisoners are protected from race discrimination is longstanding: Prisoners are protected under the Equal Protection Clause of the Fourteenth Amendment from invidious discrimination based on race." *Harrington v. Scribner*, 785 F.3d 1299, 1305 (9th Cir. 2015) (quotation marks and citation omitted).  To state a claim for violation of the Equal Protection Clause, a plaintiff must show that the defendant acted with an intent or purpose to discriminate against him based upon his membership in a protected class.  *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998).  "Intentional discrimination means that a defendant acted at least in part because of a plaintiff's protected

status." *Maynard v. City of San Jose*, 37 F.3d 1396, 1404 (9th Cir.1994) (emphasis in original) (citation omitted).

Presti fails to allege facts plausibly showing that Telefoni fabricated the misconduct report because of Presti's race. Presti alleges that Telefoni submitted the misconduct report immediately after Presti told Telefoni that the "rulebook" stated that the pull-up bars could be used until 9:00 p.m. While these allegations might support a retaliation claim, Presti alleges no facts suggesting that Telefoni acted with the intent or purpose of discriminating against Presti on account of his race. Presti's conclusory statement that Telefoni is "racist against Caucasians" is not enough. *See Pagtakhan v. Doe*, No. C 08-2188 SI (pr), 2013 WL 3052865, at *4 (N.D. Cal. June 17, 2013) ("Even with liberal construction, the allegations do not state a cognizable equal protection claim for racial discrimination because there is no non-conclusory allegation of intent or purpose to discriminate against plaintiff based on his race."). Presti's equal protection claim in Count II against Telefoni is DISMISSED with leave granted to amend.

### b. Disparate punishment

Presti alleges in Count VII that Keliihoomalu treated him in a "discriminatory manner" during a January 27, 2021 adjustment hearing.[6] ECF No.

---

[6] While Presti states that he saw "hints" that Keliihoomalu at times showed favoritism to Native Hawaiians, he does not allege facts plausibly showing that

1 at 17–18.  According to Presti, eight other inmates at the OCCC were found guilty of refusing to obey an order within a week of each other, but they were only "unofficially deprived of 1 store order[.]" *Id.* at 17.

Presti fails to allege facts sufficient to show that Keliihoomalu intentionally treated him differently than the eight prisoners he mentions.  Presti does not allege that Keliihoomalu decided on the punishment for the eight other inmates, nor does he allege that Keliihoomalu was even aware of the punishments the other inmates received.  Moreover, Presti has not alleged facts sufficient to show that that the other prisoners were similarly situated to him.  He does not say how the facts underlying the other prisoners' misconduct violations were like his own.  *See Warkentine v. Soria*, 152 F. Supp. 3d 1269, 1294 (E.D. Cal. 2016) ("[T]o be considered similarly situated, the class of one challenger and his comparators must be prima facie identical in all relevant respects or directly comparable in all material respects." (quotation marks and citation omitted)).  Presti's "conclusory allegations regarding similarly situated other prisoners do not suffice to state a 'class of one' equal protection claim." *Medlock v. Trierweiler*, No. 1:18-cv-785, 2018 WL 4234227, at *4 (W.D. Mich. Sept. 6, 2018).  Presti's equal protection

---

Keliihoomalu acted with the intent or purpose of discriminating against him in crafting Presti's punishment.

claim in Count VII against Keliihoomalu is DISMISSED with leave granted to amend.

## IV.  <u>LEAVE TO AMEND</u>

When a pleading is dismissed under 28 U.S.C. § 1915(e) or 28 U.S.C. § 1915A, district courts have discretion to dismiss with or without leave to amend. *Lopez v. Smith*, 203 F.3d 1122, 1126–30 (9th Cir. 2000) (en banc).  "Under Ninth Circuit case law, district courts are only required to grant leave to amend if a complaint can possibly be saved.  Courts are not required to grant leave to amend if a complaint lacks merit entirely."  *Id.* at 1129.  "Unless it is absolutely clear that no amendment can cure the defect, however, a pro se litigant is entitled to notice of the complaint's deficiencies and an opportunity to amend prior to dismissal of the action."  *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995) (citations omitted); *see also Rodriguez v. Steck*, 795 F.3d 1187, 1188 (9th Cir. 2015) (order) ("We have held that a district court's denial of leave to proceed in forma pauperis is an abuse of discretion unless the district court first provides a plaintiff leave to amend the complaint or finds that amendment would be futile.").

The Complaint is DISMISSED with partial leave granted to amend.  If Presti decides to pursue any of his claims, he must file a first amended complaint on or before **November 15, 2021** that attempts to cure the deficiencies in those claims. Presti may not expand his claims beyond those already alleged herein or add new

claims, without explaining how those new claims relate to the claims alleged in the Complaint. Claims that do not properly relate to those in the Complaint are subject to dismissal.

Presti must comply with the Federal Rules of Civil Procedure and the Local Rules for the District of Hawaii, particularly LR10.4, which require an amended complaint to be complete itself, without reference to any prior pleading. An amended complaint must be short and plain, comply with Rule 8 of the Federal Rules of Civil Procedure, and be submitted on the court's prisoner civil rights form. An amended complaint will supersede the preceding complaint. *See Ramirez v. County of San Bernardino*, 806 F.3d 1002, 1008 (9th Cir. 2015); LR99.1; LR10.4. Claims not realleged in an amended complaint may be deemed voluntarily dismissed. *See Lacey v. Maricopa County*, 693 F.3d 896, 928 (9th Cir. 2012).

## V. <u>28 U.S.C. § 1915(g)</u>

If Presti fails to file an amended complaint or is unable to amend his claims to cure their deficiencies, this dismissal may count as a "strike" under 28 U.S.C. § 1915(g). Under this "3-strikes" provision, a prisoner may not bring a civil action or appeal a civil judgment in forma pauperis,

> if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted,

unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g).

Alternatively, Presti may voluntarily dismiss his action pursuant to Fed. R. Civ. P. 41(a)(1), and such a dismissal will not count as a strike under 28 U.S.C. § 1915(g).

## VI.  <u>CONCLUSION</u>

(1) Presti's claims for injunctive relief are DISMISSED with prejudice.

(2) Presti's remaining claims are DISMISSED with leave granted to amend.

(3) If Presti decides to pursue any of his claims, he must file an amended complaint that addresses the noted deficiencies in his claims on or before **November 15, 2021**.

(4) Failure to timely file an amended pleading may result in AUTOMATIC DISMISSAL of this suit without further notice, and Presti may incur a strike under 28 U.S.C. § 1915(g).  ALTERNATIVELY, Presti may voluntarily dismiss his action pursuant to Fed. R. Civ. P. 41(a)(1), and such a dismissal will not count as a strike under 28 U.S.C. § 1915(g).

//

//

//

(5) The Clerk is DIRECTED to send Presti a blank prisoner civil rights complaint form so that he can comply with this order if he elects to file an amended pleading.

IT IS SO ORDERED.

DATED:  October 15, 2021 at Honolulu, Hawaii.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**CODY JOSEPH PRESTI VS. ACO DARREN TELEFONI, ET AL; CV 21-00405 LEK-WRP; ORDER DISMSSING COMPLAINT WITH PARTIAL LEAVE GRANTED TO AMEND**