IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| CODY JOSEPH PRESTI, | CIVIL NO. 21-00405 LEK-WRP |
| Plaintiff, | ORDER DISMISSING SECOND AMENDED COMPLAINT AND ACTION PURSUANT TO 28 U.S.C. § 1915(e)(2) |
| vs. | |
| ACO DARREN TELEFONI, *et al.*, | |
| Defendants. | |

## ORDER DISMISSING SECOND AMENDED COMPLAINT AND ACTION PURSUANT TO 28 U.S.C. § 1915(e)(2)

Before the Court is pro se Plaintiff Cody Joseph Presti's ("Presti") Second

Amended Prisoner Civil Rights Complaint ("SAC") brought pursuant to 42 U.S.C.

§ 1983. ECF No. 10. Presti alleges that Defendants[1] violated his rights under the

United States Constitution over the course of three weeks in January 2021, while

he was incarcerated at the Oahu Community Correctional Center ("OCCC").[2] For

---

[1] Presti names as Defendants ACO Darren Telefoni, Captain Johnson, CBA Wendel Yoda, Sergeant Alison, UTM An Uedoi, and Case Manager Muriel Keliihoomalu in their individual capacities. ECF No. 10 at 1–4.

[2] Presti is no longer incarcerated. *See* ECF Nos. 8, 9; *see also* VINE, https://www.vinelink.com/classic/#/home/site/50000 (choose "Find an Offender"; then enter "Presti" in "Last Name" field and "Cody" in "First Name" field) (last visited Jan. 4, 2022).

the following reasons, the SAC and this action are DISMISSED pursuant to 28 U.S.C. § 1915(e)(2).

## I. **STATUTORY SCREENING**

The Court must conduct a pre-Answer screening of any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity, or in which a plaintiff proceeds in forma pauperis.  28 U.S.C. §§ 1915(e)(2), 1915A(a); *Jones v. Bock*, 549 U.S. 199, 202 (2007) ("Among other reforms, the [Prison Litigation Reform Act of 1995] mandates early judicial screening of prisoner complaints.").  During this screening, the Court must dismiss any complaint, or any portion thereof, that is frivolous, malicious, fails to state a claim on which relief may be granted, or seeks damages from defendants who are immune from suit.  *See* 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b); *Harris v. Mangum*, 863 F.3d 1133, 1137 (9th Cir. 2017); *see also Harris v. Harris*, 935 F.3d 670, 675 (9th Cir. 2019) (describing screening under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(a)–(b)).

In determining whether a complaint should be dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2)(B)(ii) or 1915A(b)(1), the Court applies the same standard as that under Federal Rule of Civil Procedure 12(b)(6) ("Rule 12").  *See Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) (per curiam).  Under this standard, a complaint must "contain sufficient factual matter, accepted as true,

to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted); *Byrd v. Phx. Police Dep't*, 885 F.3d 639, 642 (9th Cir. 2018) (per curiam).  "[W]hen determining whether a complaint states a claim, a court must accept as true all allegations of material fact and must construe those facts in the light most favorable to the plaintiff." *Hamilton v. Brown*, 630 F.3d 889, 892–93 (9th Cir. 2011) (quotation marks and citation omitted).  Courts also have an "obligation where the [plaintiff] is pro se, particularly in civil rights cases, to construe the pleadings liberally and to afford the [plaintiff] the benefit of any doubt." *Byrd*, 885 F.3d at 642 (quotation marks and citation omitted).

## II.  **BACKGROUND**[3]

Presti filed his original Complaint and an application to proceed in forma pauperis on October 6, 2021.  ECF Nos. 1, 2.  The Court granted Presti's application to proceed in forma pauperis on October 7, 2021.  ECF No. 3.  On October 15, 2021, the Court issued an Order Dismissing Complaint with Partial Leave Granted to Amend.  ECF No. 4.  In dismissing the Complaint, the Court specifically identified the deficiencies in each of Presti's claims.  *See id.*

---

[3] Presti's factual allegations are accepted as true for purposes of screening.  *See Nordstrom v. Ryan*, 762 F.3d 903, 908 (9th Cir. 2014).

Presti filed his First Amendment Complaint ("FAC") on November 16, 2021.  ECF No. 5.  On November 23, 2021, the Court issued an Order Dismissing First Amended Complaint with Leave Granted to Amend.  ECF No. 7.  In dismissing the FAC, the Court again identified the deficiencies in each of Presti's claims.  *See id.*

Presti filed his SAC on December 23, 2021.  ECF No. 10.  Presti alleges in the SAC that at approximately 6:05 p.m. on January 6, 2021, he was stretching near a set of pull-up bars in the OCCC's recreation yard when ACO Telefoni instructed him to move to the "bench area."  *Id.* at 7.  Presti immediately complied. *Id.*  Telefoni then told Presti that he might be transferred to the HCF, apparently because Presti had been near the pull-up bars.  *Id.*  Presti confronted Telefoni with the fact that the "rulebook" stated that the pull-up bars could be used until 9:00 p.m. *Id.* at 8.  Telefoni asked Presti, "What?"  *Id.*  Presti repeated himself.  *Id.* Telefoni then exclaimed, "What!"  *Id.*  Presti again repeated himself.  *Id.*  Telefoni responded by shouting, "Fuck da rulebook!"  *Id.*  According to Presti, Telefoni retaliated against him for citing the rulebook by telling a lieutenant that Presti had "refused to obey an order" and preparing a "fraudulent misconduct report."  *Id.* Telefoni referred to Presti as a "haole" and challenged him to a fight, but Presti does not allege that there was any physical altercation between them.  *Id.*

Soon afterward, the lieutenant ordered all inmates to lockdown in their "bunk areas." *Id.* Later the same evening, a sergeant lifted the lockdown for all inmates except Presti. *Id.* According to Presti, Telefoni's sister, Captain Johnson, ordered his lockdown to remain in place. *Id.* at 8–9, 11. Specifically, Johnson issued an order stating that Presti was not allowed to exercise, and he had to eat on the floor near his bunk. *Id.* at 12–13. Presti was subject to these restrictions until January 10, 2021. *Id.* at 13.

On January 10, 2021, CBA Yoda moved Presti to an administrative segregation cell while an investigation of Presti's alleged misconduct was pending. *Id.* at 14. During this time, Sergeant Alison ordered the removal of a "metal bed/desk" from Presti's cell. *Id.* at 16. Presti was forced to eat and sleep on the floor. *Id.* at 17. Alison also "ordered or permitted" Presti's "hygiene items" including his toothbrush, toothpaste, soap, washcloth, shampoo, conditioner, and deodorant to be confiscated. *Id.* at 16. According to Presti, the high temperature in his cell each day ranged between 90–100 degrees. *Id.* at 18. There was no running water in the cell and Presti was limited to one forty-ounce bottle of drinking water each day. *Id.* When Presti "call[ed] out" to Alison about these issues, Alison allegedly ignored him. *Id.* Presti remained in administrative segregation until January 19, 2021. *Id.*

Uedoi served as the adjustment hearing officer during a January 25, 2021 adjustment hearing for Presti.  *Id.* at 20.  According to Presti, Uedoi (1) demonstrated bias by interrupting Presti; (2) disregarded three witnesses' testimony; and (3) misquoted Presti's statement and included "fictitious information" in a written disposition.  *Id.* at 20–21.  Presti claims that Keliihoomalu imposed a punishment on him different from eight other inmates who had been found guilty of refusing to obey an order around the same time.  *Id.* at 22–23.

In his request for relief, Presti seeks damages totaling $1,497,900.  *Id.* at 24–25.

### III.  <u>DISCUSSION</u>

### A.  Legal Framework for Claims Under 42 U.S.C. § 1983

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege:  (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under color of state law.  *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Park v. City & County of Honolulu*, 952 F.3d 1136, 1140 (9th Cir. 2020).  Section 1983 requires a connection or link between a defendant's actions and the plaintiff's alleged deprivation.  *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 692 (1978); *Harper*

6

*v. City of Los Angeles*, 533 F.3d 1010, 1026 (9th Cir. 2008) ("In a § 1983 action, the plaintiff must also demonstrate that the defendant's conduct was the actionable cause of the claimed injury." (citation omitted)).  "'A person "subjects" another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'"  *Lacey v. Maricopa County*, 693 F.3d 896, 915 (9th Cir. 2012) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978)).

## B.  First Amendment

Presti alleges in Count I that ACO Telefoni violated the First Amendment by retaliating against him.  ECF No. 10 at 7–10.

"Section 1983 provides a cause of action for prison inmates whose constitutionally protected activity has resulted in retaliatory action by prison officials."  *Jones v. Williams*, 791 F.3d 1023, 1035 (9th Cir. 2015).  "[A] viable claim of First Amendment retaliation entails five basic elements:  (1) [a]n assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal."  *Rhodes v. Robinson*, 408 F.3d 559, 567-568 (9th Cir.

2005) (citations omitted); *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009) (same).

Regarding the third element—that is, whether the inmate engaged in protected conduct—"a prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974); *Jones*, 791 F.3d at 1035. For example, inmates have a First Amendment right to send and receive mail. *Nordstrom v. Ryan*, 865 F.3d 1265, 1271 (9th Cir. 2017). The First Amendment also "guarantees a prisoner a right to seek redress of grievances from prison authorities and as well as a right of meaningful access to the courts." *Jones*, 791 F.3d at 1035.

While neither the Supreme Court nor the Ninth Circuit has specifically addressed what oral speech by an inmate directed toward a prison official is protected by the First Amendment, numerous courts have concluded that a verbal confrontation between an inmate and a prison official solely based on the inmate's dissatisfaction with a directive from the official is not protected speech. *See Rangel v. LaTraille*, No. 1:10-cv-01790-AWI-BAM (PC), 2014 WL 4163599, at *8 (E.D. Cal. Aug. 20, 2014) ("[P]rotests that involve direct confrontation with prison officials enjoy limited constitutional protection due to the danger of a prison disturbance."), *adopted by* 2014 WL 5483752 (E.D. Cal. Oct. 29, 2014); *Nunez v.*

8

*Ramirez*, No. 09cv413 WQH (BLM), 2010 WL 1222058, at *5 (S.D. Cal. Mar. 24, 2010) (concluding that "a direct, face-to-face confrontation presents a danger of a disturbance and a disruption to institutional order and discipline" and is therefore not protected speech); *Bass v. Neotti*, No. 09cv1850-MMA (CAB), 2010 WL 3339490, at *6 (S.D. Cal. Aug. 23, 2010) (noting that "protests and complaints that involve a direct confrontation with prison officials . . . enjoy limited constitutional protection because such behavior may present the danger of a disturbance); *see also Oriakhi v. Wood*, No. 3:CV-05-0053, 2006 WL 859543, at *5 (M.D. Pa. Mar. 31, 2006) ("[A] brief and isolated verbal inquiry does not constitute protected First Amendment speech.  To construe it as such would elevate every verbal exchange between a prison employee and a prisoner to the level of protected speech under the First Amendment."); *Carl v. Griffin*, No. 08 CV 4981 (RMB) (MHD), 2011 WL 723553, at *5 (S.D.N.Y. Mar. 2, 2011) (same).

According to Presti, Telefoni instructed him to move from the pull-up bars to the "bench area."  ECF No. 10 at 7.  After Presti complied, he verbally confronted Telefoni by repeatedly stating that the rulebook allowed use of the pull-up bars until 9:00 p.m.  *Id.* at 7–8.  Presti has not plausibly alleged that he engaged in protected speech based on this brief, isolated verbal exchange with Telefoni.  Because Presti's statements regarding the rulebook are not afforded First Amendment protection, they cannot serve as the basis for a retaliation claim.  *See*

*Hanson v. Jamerson*, No. 3:17cv1335-DMS (BLM), 2019 WL 1220771, at *11

(S.D. Cal. Mar. 15, 2019), *adopted by* 2019 WL 2089507 (S.D. Cal. May 13,

2019).  Presti's retaliation claim against Telefoni is DISMISSED.

## C.  Eighth Amendment

Presti alleges in Count III that Captain Johnson violated the Eighth

Amendment by prohibiting him from exercising and requiring him to eat on the

floor between January 6–10, 2021.  ECF No. 10 at 12–13.  He alleges in Count V

that Sergeant Alison violated the Eighth Amendment by ordering the removal of a

bed and desk from his cell, confiscating his "hygiene items," and denying him

adequate water between January 10–19, 2021.  *Id.* at 16–19.

"The Constitution does not mandate comfortable prisons, but neither does it

permit inhumane ones, and it is now settled that the treatment a prisoner receives in

prison and the conditions under which he is confined are subject to scrutiny under

the Eighth Amendment."  *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quotation

marks and citations omitted).  In its prohibition on "cruel and unusual

punishments," the Eighth Amendment "imposes duties on [prison] officials, who

must provide humane conditions of confinement; prison officials must ensure that

inmates receive adequate food, clothing, shelter, and medical care, and must take

reasonable measures to guarantee the safety of the inmates[.]"  *Id.* (quotation

marks and citations omitted); *see Foster v. Runnels*, 554 F.3d 807, 812 (9th Cir. 2009).

A prison official violates the Eighth Amendment when two requirements are met. First, the deprivation alleged must be, objectively, "sufficiently serious"— that is, "a prison official's act or omission must result in the denial of 'the minimal civilized measure of life's necessities[.]'" *Farmer*, 511 U.S. at 834 (some internal quotation marks and citations omitted); *see Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000). Second, the prison official must have a sufficiently culpable state of mind. "In prison-conditions cases that state of mind is one of 'deliberate indifference' to inmate health or safety[.]" *Farmer*, 511 U.S. at 834 (citations omitted). Thus, "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety[.]" *Id.* at 837. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.*

When determining whether conditions of confinement meet the objective prong of the Eighth Amendment analysis, the court must analyze each condition separately to determine whether that specific condition violates the Eighth Amendment. *See Toussaint v. McCarthy*, 801 F.2d 1080, 1107 (9th Cir. 1986),

*abrogated in part on other grounds by Sandin v. Connor*, 515 U.S. 472, 482–83 (1995); *Wright v. Rushen*, 642 F.2d at 1129, 1133 (9th Cir. 1981).  "*Some* conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise—for example, a low cell temperature at night combined with a failure to issue blankets." *Wilson v. Seiter*, 501 U.S. 294, 304 (1991).  When considering conditions of confinement, the court should also consider the amount of time to which the prisoner was subjected to the condition.  *See Hutto v. Finney*, 437 U.S. 678, 686–87 (1978); *Hearns v. Terhune*, 413 F.3d 1036, 1042 (9th Cir. 2005).

### 1.  Conditions experienced between January 6–9, 2021 (Count III)

#### a.  Eating on the floor

Presti alleges in Count III that Johnson issued an order that required him to "eat on the floor" between January 6–10, 2021.  ECF No. 10 at 13.

As the Supreme Court has said, "extreme deprivations are required to make out a conditions-of-confinement claim.  Because routine discomfort is part of the penalty that criminal offenders pay for their offenses against society, only those deprivations denying the minimal civilized measure of life's necessities are

sufficiently grave to form the basis of an Eighth Amendment violation." *Hudson v. McMillian*, 503 U.S. 1, 8–9 (1992) (quotation marks citations omitted); *LeMaire v. Maass*, 12 F.3d 1444, 1456 (1993).

The fact that Presti may have had to eat his meals without a table over the course of a few days fails to meet the objective prong of an Eighth Amendment claim. *See*, *e.g.*, *Cornellier v. Walker*, No. CV 04-0724-PHX-PGR (JJM), 2004 WL 7334915, at *6 (D. Ariz. Aug. 11, 2004) ("The lack of a table upon which to eat, requiring Plaintiff to eat on while sitting on his bed, the floor or toilet, does not rise to the level of cruel or unusual punishment.  At best, it is a mere inconvenience, not a deprivation of minimal civilized measure of life's necessities."); *Martin v. Montgomery Cnty. Jail*, No. 3:15-cv-00650, 2015 WL 3823867, at *3 (M.D. Tenn. June 19, 2015) ("Having to eat without a table or chairs does not amount to [the] level of deprivation [required to violate the Eighth Amendment].").

Moreover, Presti has not plausibly alleged that Johnson was deliberately indifferent to an excessive risk to his health or safety.  Although Presti alleges that eating on the floor caused pain in his knees, legs, hips, and back, ECF No. 10 at 13, Presti does not allege that Johnson was aware of this fact.  While Presti alleges that he told ACO Utoafili and Sergeant Chris that sitting on the floor hurt his back, these prison officials are not named as defendants in this action.  Presti does not

13

allege that either Utoafili or Chris conveyed what he had told them to Johnson.

Presti's Eighth Amendment claim based on having to eat on the floor is

DISMISSED.

### b.  Lack of exercise

Presti further alleges in Count III that Johnson prohibited him from

exercising between January 6–10, 2021.  ECF No. 10 at 12–13.

"Exercise has been determined to be one of the basic human necessities

protected by the Eighth Amendment."  *LeMaire*, 12 F.3d at 1457.  Although "the

lack of outside exercise for extended periods is a sufficiently serious deprivation

and thus meets the requisite harm necessary to satisfy [the Eighth Amendment's]

objective test," *id.*, "a temporary denial of outdoor exercise with no medical effects

is not a substantial deprivation," *May v. Baldwin*, 109 F.3d 557, 565 (9th Cir.

1997) (denial of outdoor exercise for twenty-one days did not rise to the level of a

serious deprivation under the Eighth Amendment).  *See also Lopez v. Smith*, 203

F.3d 1122, 1133 n.15 (9th Cir. 2000) (en banc) ("[T]emporary denials of outdoor

exercise must have adverse medical effects to meet the Eighth Amendment test,

while long-term deprivations are substantial regardless of effects.").

Presti alleges that Johnson denied him exercise over the course of five days.

ECF No. 10 at 12–13.  Given the relatively short-term nature of the deprivation,

Presti must plausibly allege that he experienced adverse medical effects because of the lack of exercise.  According to Presti, he has "fiberous scar tissue in [his] left hamstring."  *Id.* at 12.  This condition causes cramps in one of Presti's legs and his back.  *Id.*  Normally, Presti alleviates these issues by "stretch[ing] and/or decompress[ing] [his] leg/back muscles on a daily basis."  *Id.*  According to Presti, the lack of exercise caused "cramping in [his] back muscles" and "degraded [his] bodily ability to function."  *Id.*  Liberally construed, Presti has alleged an adverse medical effect.

Presti fails to allege, however, that Johnson was deliberately indifferent to an excessive risk to his health or safety.  Presti does not allege that he told Johnson about either his medical condition or that he needed space to stretch and "decompress [his] spine."  *Id.* at 12.  Nor has Presti otherwise plausibly alleged that Johnson knew of and disregarded an excessive risk to his health.  Presti's Eighth Amendment claim against Johnson based on a lack of exercise is also DISMISSED.

## 2. Conditions experienced between January 10–19, 2021 (Count V)

### a. Furniture

Presti alleges in Count V that Alison ordered the "metal bed/desk" removed from his cell while he was in administrative segregation between January 10–19, 2021. ECF No. 10 at 16.

To the extent Presti alleges that he had to eat on the floor because he did not have a desk, for the reasons set forth *supra*, he fails to allege an extreme deprivation. *See*, *e.g.*, *Cornellier*, 2004 WL 7334915, at *6; *Martin*, 2015 WL 3823867, at *3.

To the extent Presti claims that Alison ordered his "bed" removed, he also fails to allege an extreme deprivation. Being denied a bed for a few nights does not meet the objective prong of an Eighth Amendment claim. *See Urrizaga v. Twin Falls County*, 106 F. App'x 546 548 (9th Cir. 2004) ("[Plaintiff's] claim that he was denied a bed [for a few nights] fails to meet the required 'objective' showing."). This is true even if Presti had to sleep directly on the floor of his cell. *See Centeno v. Wilson*, No. 1:08-CV-1435-FJM, 2011 WL 836747, at (E.D. Cal. Mar. 4, 2011) (concluding that sleeping on a cold floor without a mattress or blanket for seven days did not violate the Eighth Amendment), *aff'd*, 479 F. App'x

101 (9th Cir. 2012).  Presti's claim based on the removal of furniture from his cell is DISMISSED.

### b.  Hygiene items

Presti further alleges in Count V that Alison ordered his "hygiene items" confiscated.  ECF No. 10 at 16.

"Unquestionably, subjection of a prisoner to lack of sanitation that is severe or prolonged can constitute an infliction of pain within the meaning of the Eighth Amendment."  *Anderson v. County of Kern*, 45 F.3d 1310, 1314 (9th Cir. 1995).  As a result, "[i]ndigent inmates have the right to personal hygiene supplies such as toothbrushes and soap."  *Keenan v. Hall*, 83 F.3d 1083, 1091 (9th Cir. 1996).

Presti alleges that Alison "ordered or permitted" the confiscation of his toothbrush, toothpaste, soap, washcloth, shampoo, conditioner, and deodorant.  ECF No. 10 at 16.  Presti fails to allege, however, a severe or prolonged lack of sanitation.  Presti does not say if he was denied his hygiene items for the whole time between January 10–21, 2021, or only for shorter periods.  *See Meza v. Murillo*, No. 3:16-cv-03008-CAB-BLM, 2017 WL 882483, at *3 (S.D. Cal. Mar. 6, 2017) ("Plaintiff's [pleading] fails to contain sufficient factual allegations to suggest that the denial of supplies for an unspecified period of time amounts to the type of objectively serious deprivation the Cruel and Unusual Punishments Clause

exists to prevent.").  Indeed, Presti appears to acknowledge that another guard allowed Presti to access his hygiene items for thirty minutes each day.  *Id.* at 17. Presti therefore fails to state a plausible Eighth Amendment claim based on the confiscation of his hygiene items.  *See Martin v. Basnett*, No. 17-cv—6263-YGR (PR), 2020 WL 450565, at *8 (N.D. Cal. Aug. 5, 2020) (concluding that confiscation of soap, toothpaste, deodorant, shampoo, conditioner, and cleaning supplies for thirteen days did not violate the Eighth Amendment).  This claim is DISMISSED.

### c. Drinking water

Presti also alleges in Count V that Alison denied him adequate drinking water.  ECF No. 10 at 18.  According to Presti, prison officials provided him with "a 40 oz. bottle of drinking water" each morning.  *Id.* at 18–19.  Presti had no other source of water because the sink in his cell was broken.  *Id.*  Presti also estimated that the high temperature in his cell each day reached between 90–100 degrees.  *Id.*

Presti has not adequately alleged an extreme deprivation.  Although Presti alleges that he "usually" finished the forty-ounce bottle of water during dinner, he does not say how many days he needed additional water before he received a new bottle the next morning.  Additionally, although Presti alleges that the high temperature in his cell sometimes reached between 90–100 degrees during the day, he does not allege that his cell was uncomfortably hot at night.

Moreover, Presti has not plausibly alleged that Alison acted with deliberate indifference.  Although Presti states that he "call[ed] out" to Alison for water, he does not say when this allegedly occurred.  Presti has not otherwise alleged facts showing that Alison knew of and disregarded his need for drinking water.  Presti's claim based on the availability of drinking water is DISMISSED.

### d.  Medical care

Presti suggests in Count V that Alison also denied him medical care.  ECF No. 10 at 18.

"Individuals in state custody have a constitutional right to adequate medical treatment."  *Sandoval v. County of San Diego*, 985 F.3d 657, 667 (9th Cir. 2021) (citing *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976)).  "In order to prevail on a claim under the Eighth Amendment for inadequate medical care, a plaintiff must show 'deliberate indifference' to his 'serious medical needs.'"  *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014).  "This includes both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a subjective standard—deliberate indifference."  *Id.* (quotation marks omitted).

To meet the objective element, a plaintiff must first demonstrate the existence of a serious medical need.  *Estelle*, 429 U.S. at 104.  Such a need exists if

failure to treat the injury or condition "could result in further significant injury" or cause "the unnecessary and wanton infliction of pain." *Edmo v. Corizon*, 935 F.3d 757, 785 (9th Cir. 2019) (per curiam) (quotation marks omitted).  "Examples of serious medical needs include [t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Lopez*, 203 F.3d at 1131 (internal quotation marks omitted).  "Serious medical needs can relate to physical, dental and mental health." *Edmo*, 935 F.3d at 785 (quotation marks omitted).

If a prisoner "establishes a sufficiently serious medical need, he must then show the [official's] response to the need was deliberately indifferent." *Edmo*, 935 F.3d at 786 (quotation marks omitted).   "Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004).  The indifference to a prisoner's medical needs must be "substantial." *Lemire v. Cal. Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1081–82 (9th Cir. 2013).  "Mere 'indifference,' 'negligence' or 'medical malpractice'" will not support a denial-of-medical-care claim.  *Id.* at 1082.  "Even gross negligence is insufficient to establish deliberate indifference to serious medical needs." *Id.*  Likewise, "[a] difference of opinion between a physician and the prisoner—or between medical professionals—concerning what medical care is appropriate does not amount to

deliberate indifference." *Snow v. McDaniel*, 681 F.3d 978, 987 (9th Cir. 2012)

(citing *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989)), *overruled on other*

*grounds by Peralta v. Dillard*, 744 F.3d 1076, 1083 (9th Cir. 2014) (en banc).  "To

show deliberate indifference, the plaintiff must show that the course of treatment

the [official] chose was medically unacceptable under the circumstances and that

the [official] chose this course in conscious disregard of an excessive risk to the

plaintiff's health." *Edmo*, 935 F.3d at 786 (quotation marks omitted) (brackets in

original).

Presti alleges that he has asthma and that dust in his cell caused him to have

"trouble breathing, frequent coughing, and pain in [his] esophagus [and] lungs."

ECF No. 10 at 18.  "Asthma, if serious enough, can constitute injury for Eighth

Amendment purposes." *Jarrett v. Ryan*, No. CV-17-01589-PHX-JAT (CDB),

2019 WL 2076045, at *5 (D. Ariz. May 10, 2019).  Presti further alleges that at

one point he "felt like [he] was close to having a heat stroke." ECF No. 10 at 18.

Construed liberally, Presti plausibly alleges a serious medical need.

Presti has not alleged, however, that Alison was deliberately indifferent to a

serious medical need.  Presti does not allege that he personally spoke to Alison

about the dust in his cell, his asthma, or his need for medical care.  While Presti

alleges that he "call[ed] [Alison] for help" he has not alleged sufficient facts to

show that Alison knew of and disregarded a serious medical need.  Similarly,

21

although Presti claims that he felt as though he might experience a heat-related injury at some point, he does not allege that he personally conveyed this fear to Alison.  Nor has he otherwise plausibly alleged that Alison knew of and disregarded a serious medical need.  Any denial-of-medical-care claim is DISMISSED.

## E.  Fourteenth Amendment

### 1.  Due Process

The Due Process Clause of the Fourteenth Amendment of the U.S. Constitution protects individuals against governmental deprivations of life, liberty, or property without due process of law.  Interests that are procedurally protected by the Due Process Clause may arise from two sources:  the Due Process Clause itself and laws of the states.  *See Meachum v. Fano*, 427 U.S. 215, 223–27 (1976).  In the prison context, these interests are generally ones pertaining to liberty.  Changes in conditions so severe as to affect the sentence imposed in an unexpected manner implicate the Due Process Clause itself, whether or not they are authorized by state law.  *See Sandin*, 515 U.S. at 484 (citing *Vitek v. Jones*, 445 U.S. 480, 493 (1980) (transfer to mental hospital), and *Washington v. Harper*, 494 U.S. 210, 221–22 (1990) (involuntary administration of psychotropic drugs)).  Deprivations that are less severe or more closely related to the expected terms of confinement may also amount to deprivations of a procedurally protected liberty interest, provided that

the liberty in question is one of "real substance."  *See Sandin*, 515 U.S. at 477–87.

An interest of "real substance" will generally be limited to freedom from restraint

that imposes an "atypical and significant hardship on the inmate in relation to the

ordinary incidents of prison life" or "will inevitably affect the duration of [a]

sentence."  *Id.* at 484, 487.

Identifying a constitutionally protected liberty interest is only the first step;

the prisoner also must identify the procedural protections not provided to him

when he was deprived of that constitutionally protected liberty interest to state a

claim.  The procedural protections to which the prisoner is entitled depend on

whether the deprivation results from an administrative decision or a disciplinary

decision.  If it is an administrative decision, due process requires that prison

officials hold an informal non-adversary hearing within a reasonable time after the

prisoner is segregated, inform the prisoner of the reason segregation is being

considered, and allow the prisoner to present his views.  *See Toussaint*, 801 F.2d at

1100, 1104–05.  There also must be some evidence to support the prison officials'

decision.  *Superintendent v. Hill*, 472 U.S. 445, 455 (1985).  If it is a disciplinary

decision, the procedural protections required for the hearing include written notice,

time to prepare for the hearing, a written statement of decision, allowance of

witnesses and documentary evidence when not unduly hazardous, and aid to the

accused where the inmate is illiterate or the issues are complex.  *Wolff v.*

*McDonnell*, 418 U.S. 539, 564–67 (1974).  There also must be some evidence to support the disciplinary decision, see *Superintendent v. Hill*, 472 U.S. at 454, and the information that forms the basis for the decision must have some indicia of reliability, *see Cato v. Rushen*, 824 F.2d 703, 704-05 (9th Cir. 1987).

### a. Restricting Presti to "bunk area"

Presti alleges in Count II that Johnson violated his due process rights by restricting him to his "bunk area" between January 6–10, 2021.  ECF No. 10 at 11. During this five-day period, Presti was denied exercise, and he had to eat on the floor.  *Id.* at 12–15.  Presti fails to allege facts sufficient to demonstrate that these short-term deprivations implicated a constitutionally protected liberty interest.  *See King v. Jauregui*, 851 F. App'x 95, 95 (9th Cir. 2021) (concluding that temporary loss of privileges did not implicate a protected liberty interest); *Quoc Xuong Luu v. Babcock*, 404 F. App'x 141, 142 (9th Cir. 2010) ("[T]he district court properly dismissed [plaintiff's] due process claim concerning his temporary loss of prison privileges because [plaintiff] failed to allege facts implicating a protected liberty interest."); *see also Barno v. Padilla*, No. 20-cv-03886-SI, 2020 WL 65427, at *3 (N.D. Cal. Nov. 6, 2020) ("The . . . discipline -- 90 days of loss of privilege and property restrictions -- was a temporary situation of the sort that courts have repeatedly held does not amount to the "atypical and significant hardship" that *Sandin* requires for a right to due process to exist.").  Count II is DISMISSED.

24

### b. Placement in administrative segregation

Presti alleges in Count IV that Yoda violated his due process rights simply by moving him to an administrative segregation cell between January 10–19, 2021, while his adjustment process was pending.  ECF No. 10 at 14–15.  Presti fails to state a claim, however, because administrative segregation by itself does not implicate a protected liberty interest.  *See Sandin*, 515 U.S. at 486; *Kenner v. Vidaurri*, 569 F. App'x 489, 490 (9th Cir. 2014); *see also Walker v. Gonzalez*, No. 3:20-cv-0404-CAB (AHG), 2020 WL 4672640, at *3 (S.D. Cal. Aug. 11, 2020) ("Plaintiff does not have a protected liberty interest in remaining free from Ad-Seg pending a disciplinary hearing.").  Count IV is DISMISSED.

### c. Adjustment hearing

Presti alleges in Count VI that Uedoi violated his due process rights during a January 25, 2021 adjustment hearing.  ECF No. 10 at 20–21.  Once again, Presti fails to identify a protected liberty interest.

To the extent Presti asserts that he was "transferred from the least restrictive prison environment in the state to the most restrictive environment in the state," ECF No. 10 at 20, it appears that he is referring to his transfer from the OCCC to the HCF.  Prisoners, however, have no constitutional right to incarceration in a particular institution.  *Olim v. Wakinekona*, 461 U.S. 238, 244–48 (1983);

*Meachum*, 427 U.S. at 224–25.  Indeed, a prisoner's liberty interests are sufficiently extinguished by his conviction such that the state may generally confine or transfer him to any of its institutions, to prisons in another state or to federal prisons, without offending the Constitution.  *Rizzo v. Dawson*, 778 F.2d 527, 530 (9th Cir.1985) (citing *Meachum*, 427 U.S. at 224–25) (intrastate prison transfer does not implicate Due Process Clause), and *Olim*, 461 U.S. at 244–48 (interstate prison transfer does not implicate Due Process Clause).

To the extent Presti claims that Uedoi's decision extended his sentence, ECF No. 10 at 20, this is based on nothing more than Presti's belief that he would have been granted parole.  The mere possibility that a disciplinary violation might be detrimental to petitioner in future parole hearings is too speculative to create a liberty interest.  *See Sandin*, 515 U.S. at 487 (explaining that a disciplinary violation is only one of a "myriad of considerations" relevant to a parole decision and does not inevitably affect the length of the prisoner's sentence); *Ramirez v. Galaza*, 334 F.3d 850, 859 (9th Cir.2003) (observing that a successful challenge to a prison disciplinary proceeding will not necessarily shorten the duration of an inmate's confinement where the parole board could deny parole for other reasons), *cert. denied*, 541 U.S. 1063 (2004).  Presti's due process claim in Count VI is DISMISSED.

## 2.  Equal Protection

The Equal Protection Clause of the Fourteenth Amendment provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV, § 1.  This is "essentially a direction that all similarly situated persons should be treated alike."  *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).  An Equal Protection claim can be stated in one of two ways.  First, a plaintiff can allege that "defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class."  *See Barren v. Harrington*, 152 F.3d 1193, 1194–95 (9th Cir.1998) (citing *Washington v. Davis*, 426 U.S. 229, 239–40 (1976)).  Alternatively, if the claims do not involve a suspect classification, a plaintiff can establish an equal protection "class of one" claim by alleging that she "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."  *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *Squaw Valley Dev. Co. v. Goldberg*, 375 F.3d 936, 944 (9th Cir. 2004).

### a.  Racial discrimination

Presti suggests in Count I that Telefoni might have discriminated against him on account of his race.  ECF No. 10 at 9.

"The fundamental principle that prisoners are protected from race discrimination is longstanding: Prisoners are protected under the Equal Protection Clause of the Fourteenth Amendment from invidious discrimination based on race." *Harrington v. Scribner*, 785 F.3d 1299, 1305 (9th Cir. 2015) (quotation marks and citation omitted).  To state a claim for violation of the Equal Protection Clause, a plaintiff must show that the defendant acted with an intent or purpose to discriminate against him based upon his membership in a protected class. *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998).  "Intentional discrimination means that a defendant acted at least in part because of a plaintiff's protected status." *Maynard v. City of San Jose*, 37 F.3d 1396, 1404 (9th Cir.1994) (emphasis in original) (citation omitted).

Presti fails to allege facts plausibly showing that Telefoni fabricated the misconduct report because of Presti's race.  Presti alleges that Telefoni submitted the misconduct report in "retaliation for [Presti] mentioning that the rulebook state[d] the pull up bars [were] open until 2100[.]"  ECF No. 10 at 8.  Presti alleges no facts suggesting that Telefoni submitted a "fraudulent misconduct report" because of Presti's race.  Although Presti alleges that Telefoni at one point referred to him as "haole," Presti has not plausibly alleged a connection between this statement and any adverse action taken by Telefoni.  Presti's conclusory statement that Telefoni is "racist against Caucasians" is not enough. *See Pagtakhan v. Doe*,

No. C 08-2188 SI (pr), 2013 WL 3052865, at *4 (N.D. Cal. June 17, 2013) ("Even

with liberal construction, the allegations do not state a cognizable equal protection

claim for racial discrimination because there is no non-conclusory allegation of

intent or purpose to discriminate against plaintiff based on his race.").   Presti's

equal protection claim in Count II against Telefoni is DISMISSED.

### b. Disparate punishment

Presti alleges in Count VII that Keliihoomalu intentionally treated him

differently than eight other inmates who had been accused of refusing to obey an

order.  ECF No. 10 at 22–23.  According to Presti, the eight other inmates were

punished with "unofficially loss of one store order."  *Id.* at 22.

Presti fails to allege facts sufficient to show that Keliihoomalu intentionally

treated him differently than the eight prisoners he mentions.  Presti does not allege

that Keliihoomalu decided on the punishment for the eight other inmates, nor does

he allege that Keliihoomalu was even aware of the punishments the other inmates

received.  Moreover, Presti has not alleged facts sufficient to show that that the

other prisoners were similarly situated to him.  He does not say how the facts

underlying the other prisoners' misconduct violations were like his own.  *See*

*Warkentine v. Soria*, 152 F. Supp. 3d 1269, 1294 (E.D. Cal. 2016) ("[T]o be

considered similarly situated, the class of one challenger and his comparators must

be prima facie identical in all relevant respects or directly comparable in all

material respects." (quotation marks and citation omitted)).  Presti's "conclusory allegations regarding similarly situated other prisoners do not suffice to state a 'class of one' equal protection claim." *Medlock v. Trierweiler*, No. 1:18-cv-785, 2018 WL 4234227, at *4 (W.D. Mich. Sept. 6, 2018).  Presti's equal protection claim in Count VII against Keliihoomalu is DISMISSED.

## IV.  <u>NO LEAVE TO AMEND</u>

When a pleading is dismissed under 28 U.S.C. § 1915(e) or 28 U.S.C. § 1915A, district courts have discretion to dismiss with or without leave to amend. *Lopez v. Smith*, 203 F.3d 1122, 1126–30 (9th Cir. 2000) (en banc).  "Under Ninth Circuit case law, district courts are only required to grant leave to amend if a complaint can possibly be saved.  Courts are not required to grant leave to amend if a complaint lacks merit entirely." *Id.* at 1129.  "Unless it is absolutely clear that no amendment can cure the defect, however, a pro se litigant is entitled to notice of the complaint's deficiencies and an opportunity to amend prior to dismissal of the action." *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995) (citations omitted); *see also Rodriguez v. Steck*, 795 F.3d 1187, 1188 (9th Cir. 2015) (order) ("We have held that a district court's denial of leave to proceed in forma pauperis is an abuse of discretion unless the district court first provides a plaintiff leave to amend the complaint or finds that amendment would be futile.").  Because Presti

has had three opportunities to allege sufficient facts to supports his claims and is unable to do so, the SAC and this action are DISMISSED with prejudice.

## V. **28 U.S.C. § 1915(g)**

Presti is notified that this dismissal may count as a "strike" under 28 U.S.C. § 1915(g).  Under this "3-strikes" provision, a prisoner may not bring a civil action or appeal a civil judgment in forma pauperis,

> if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g); *see also Bonneau v. Alfano*, No. 3:13-cv-02110-PA, 2014WL2041826, at *1–2 (D. Or. May 9, 2014) ("Because he was imprisoned at the time he commenced the actions, his custody status at the time the dismissals were entered is irrelevant [for purposes of 28 U.S.C. § 1915(g)].").

## VI. **CONCLUSION**

(1) The Second Amended Complaint is DISMISSED pursuant to 28 U.S.C. § 1915(e)(2) for Presti's failure to state a colorable claim for relief.

(2) Because Presti has had three opportunities to state a colorable claim for relief and is unable to do so, this dismissal is with prejudice and may later constitute a strike under 28 U.S.C. § 1915(g).

(3) The Court certifies that any appeal of this order would not be taken in good faith, given Presti's failure to state a claim on which relief can be granted and his failure to amend adequately the complaint.  *See* 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3)(A).

(4) The Clerk is DIRECTED to enter judgment and terminate this case.

IT IS SO ORDERED.

DATED:  January 5, 2022, at Honolulu, Hawaii.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**CODY JOSEPH PRESTI VS. ACO DARREN TELEFONI, ET AL; CV 21-00405 LEK-WRP; ORDER DISMISSING SECOND AMENDED COMPLAINT AND ACTION PURSUANT TO 28 U.S.C. § 1915(e)(2)**